UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FRANK SHAWNTE ALLEN,

Petitioner,

v.

CONNIE GIPSON,

Respondent.

NO. CV 14-888-R (AGR)

ORDER TO SHOW CAUSE

On February 5, 2014, Petitioner filed a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, it appears that the one-year statute of limitations has expired.

The court, therefore, orders Petitioner to show cause, on or before ***March 10, 2014***, why this court should not recommend dismissal of the petition with prejudice based on expiration of the one-year statute of limitations.

# I.

## PROCEDURAL BACKGROUND

On July 19, 1991, a Los Angeles County jury convicted Petitioner of first degree murder and two counts of attempted murder. (Petition at 2.) Petitioner was sentenced to 38 years to life. (*Id.*) On March 10, 1993, the California Court of Appeal affirmed the conviction. (*Id.* at 3 & Ex. MM.) Petitioner did not file a petition for review in the California Supreme Court. (*Id.* at 3.)

On April 2, 2013, the Superior Court denied Petitioner's habeas petition. (*Id.* at 3-4 & Ex. A-1.) On June 5, 2013, the Court of Appeal denied Petitioner's habeas petition. (*Id.* at 4 & Ex. A-2.) On October 30, 2013, the California Supreme Court denied Petitioner's habeas petition. (*Id.* at 4-5 & Ex. A-3.)

On February 5, 2014, Petitioner filed the instant petition in this court in which he raises six grounds. (Petition at 8 & Attachment A.)

# II.

## STATUTE OF LIMITATIONS

The petition was filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, the court applies the AEDPA in reviewing the petition. *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).

The AEDPA contains a one-year statute of limitations for a petition for writ of habeas corpus filed in federal court by a person in custody pursuant to a judgment of a state court. 28 U.S.C. § 2244(d)(1). The one-year period starts running on the latest of either the date when a conviction becomes final under 28 U.S.C. § 2244(d)(1)(A) or on a date set in § 2244(d)(1)(B)-(D).

### A. The Date on Which Conviction Became Final – § 2244(d)(1)(A)

The Court of Appeal affirmed Petitioner's conviction on March 10, 1993. Because Petitioner did not file a petition for review with the California Supreme Court, his conviction became final 40 days later on April 19, 1993. *See Gaston v.*

*Palmer*, 417 F.3d 1030, 1033 (9th Cir. 2005). Because the conviction became final before the AEDPA was enacted, Petitioner had until April 24, 1997, to file a federal habeas petition. *Laws v. Lamarque*, 351 F.3d 919, 921 (9th Cir. 2003).

Absent tolling, the petition is time-barred.

**1. Statutory Tolling**

The statute of limitations is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Because Petitioner did not file his first state habeas petition until 2013, he is not entitled to statutory tolling. *See Welch v. Carey*, 350 F.3d 1079, 1081-84 (9th Cir. 2003) (state habeas petition filed after the limitations has expired does not revive the expired limitations period).

**2. Equitable Tolling**

"[T]he timeliness provision in the federal habeas corpus statute is subject to equitable tolling." *Holland v. Florida,* 130 S. Ct. 2549, 2554, 177 L. Ed. 2d 130 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)). "The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence." *Id.* at 2565 (citations and quotation marks omitted). The extraordinary circumstances must have been the cause of an untimely filing. *Pace*, 544 U.S. at 418. "[E]quitable tolling is available for this reason only when '"extraordinary circumstances beyond a prisoner's control make it *impossible* to file a petition on time"' and '"the extraordinary circumstances" were the *cause* of [the prisoner's] untimeliness.'" *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (citations omitted, emphasis in original).

There is no indication in the petition that Petitioner is entitled to equitable tolling.

**B. Date of Discovery – 28 U.S.C. § 2244(d)(1)(D)**

In the context of an ineffective assistance claim, the statute of limitations may start to run on the date a petitioner discovered (or could have discovered) the factual predicate for a claim that his counsel's performance was deficient, or on the date a petitioner discovered (or could have discovered) the factual predicate for prejudice, whichever is later. *See Hasan v. Galaza*, 254 F.3d 1150, 1155 (9th Cir. 2001). Therefore, the statute of limitations begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The statute starts to run when the petitioner knows or through diligence could discover the important facts, not when the petitioner recognizes their legal significance. *Hasan*, 254 F.3d at 1154 n.3.

Petitioner alleges his trial counsel was ineffective because he failed to object to the prosecutor's closing argument (Ground One) and he failed to investigate Petitioner's claim of self-defense (Ground Three). (Petition at 11-13, 16-17.) In Ground Two, Petitioner claims his appellate counsel on direct appeal was ineffective because counsel failed to raise the issue of prosecutorial misconduct. (*Id.* at 14-15.)

Petitioner was aware of the factual predicates of his claims of ineffective assistance of trial counsel by the time the prosecutor completed his closing argument. Petitioner was aware of the factual predicate of his claim of ineffective assistance of appellate counsel by the time counsel filed the opening brief. Accordingly, the date of discovery does not assist Petitioner.

**C. Actual Innocence**

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass . . . the impediment . . . of the statute of limitations."

*McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013). "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) and citing *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (emphasizing that the *Schlup* standard is 'demanding' and seldom met)).

To satisfy the standard, a petitioner must present "'new reliable evidence.'" *House*, 547 U.S. at 537. Based on all the evidence, both old and new, "the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* at 538 (citation omitted). "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.*

According to the Court of Appeal's recital of the facts, "[o]n March 18, 1990, David Lyons, his younger 15-year-old half-brother Tracy Jones, and their cousin drove to . . . where a friend of David's, Raquel Quiney lived. They arrived about 6:30 p.m., parked a short distance form the apartment house, and went to Ms. Quiney's third floor apartment. They talked to Ms. Quiney and her cousin . . . for about 30 minutes. Then, David and Tracy left, went downstairs, and waited in the first floor hall-lobby for Eric." (Petition, Ex. MM at 4.)

While they were waiting, two men arrived. David recognized one of the two, and the other was Petitioner. Tracy had an argument with Petitioner. The group went outside and the argument continued. Eric Fuller came downstairs from Quiney's apartment and told Petitioner that he was not going to let him fight Eric's cousins. Petitioner and Eric had an argument. David told Eric and Tracy that they should leave. He grabbed Eric and Tracy by the necks, "turned them around," and started walking toward the car. "Eric ducked under David's arm,

turned and started to walk back toward [Petitioner]. [Petitioner] 'just come . . . out of nowhere with a gun.' He said, 'Fuck all you niggers. Eric was about 17 feet away from [Petitioner]. [Petitioner] shot him in the chest." The first shot was fatal. Petitioner shot Eric twice more in the back. After he shot Eric, Petitioner shot David in the leg. Tracy ran down a driveway, Petitioner ran after him and fired two shots, neither of which hit Tracy. Tracy escaped over a wall, and Petitioner fled. (*Id.* at 4-6 (footnote omitted).)

In Ground Six, Petitioner argues he was actually innocent of the crimes because he acted in self-defense. (Petition at 22-23.) According to Petitioner, once everyone was outside, David challenged Petitioner to a fight with a "cl[e]nched fist." Petitioner tried to "ward him off," but David came back "with his fists cl[e]nched." While Petitioner was "preoccupied" with David, Eric came from behind Petitioner and hit him in the face. Petitioner "stumbled back." David then told everyone they should leave, and David, Tracy, and Eric began walking away. Eric then ducked beneath David's arm and "ran back towards petitioner at full-speed. Immediately followed by Lyons and Jones." Petitioner "believed his life was in danger, . . . drew his firearm and shot three times in rapid succession, followed by two more. Eric Fuller was shot 3 times and perished. David Lyons was shot once in his right leg. And Tracy Jones was shot at once." (*Id.*) Petitioner's support for these allegations is his own declaration dated February 13, 2013. (*Id.* (citing Ex. R).)

Petitioner does not meet the "stringent showing" required by actual innocence. His only new evidence is a self-serving declaration signed over 20 years later. Petitioner did not testify at his trial. (*Id.*, Ex. MM at 3-4.)[1]

---

[1] Even in Petitioner's own version of what happened, he has not demonstrated that deadly force was justified. *See People v. Clark*, 130 Cal. App. 3d 371, 380 (1982) ("deadly force or force likely to cause great bodily injury may be used only to repel an attack which is in itself deadly or likely to cause great bodily injury"), *overruled on other grounds by People v. Blakely*, 23 Cal. 4th 82, 92 (2000); *People v. Rhodes*, 129 Cal. App. 4th 1339, 1345 (2005) ("As in all

**III.**

**ORDER TO SHOW CAUSE**

IT IS THEREFORE ORDERED that, on or before ***March 10, 2014***, Petitioner shall show cause, if there be any, why the court should not recommend dismissal of the petition based on expiration of the one-year statute of limitations.

**If Petitioner fails to timely respond to the order to show cause, the court will recommend that the petition be dismissed with prejudice based on expiration of the one-year statute of limitations.**

DATED: February 11, 2014

Alicia G. Rosenberg

ALICIA G. ROSENBERG
United States Magistrate Judge

---

cases in which deadly force is used or threatened in self-defense, however, the use of the firearm must be reasonable under the circumstances and may be resorted to only if no other alternative means of avoiding the danger are available.").